Good morning, Your Honors. May it please the Court, my name is Vanessa Nguyen, pro bono appointed counsel for the petitioner, Mr. Renato Estorga Landeros. I'm a student at Chatham University School of Law and admitted to practice before this court under the supervision of Professors Acasiovi and Tito. I'd like to reserve two minutes for rebuttal. Your Honors, this court should reverse for two reasons. First, the immigration judge erred in finding that Mr. Landeros accepted the terms of an administrative voluntary departure, or ABD for short. And second, this court's holding in both Tapia v. Gonzales and Ybarra Flores v. Gonzales are applicable to the present case. And therefore, this court should find that Mr. Landeros did not effectively accept an administrative voluntary departure. Your Honors, administrative voluntary departure is a formalized process that requires notice and a knowing and voluntary acceptance by the alien of its consequences to the alien's accrual of physical presence. The burden is placed on the government to demonstrate such a knowing and voluntary acceptance by the alien so that departure would be presence-breaking and the record must contain some evidence that the alien was informed of and accepted its terms. Because administrative You realize that if we make it too onerous on the government in a voluntary departure situation, what we're going to end up with is they're not going to permit any voluntary departures. Do you know what that does to a whole class of people? Your Honors, I understand that the process that is required for administrative voluntary departure would not be too onerous on the government. It is the government's burden to prove that there's a knowing and voluntary acceptance by the alien. And the government may prove this by several procedural safeguards that are indicia of when You're not talking about just knowingly accepting the voluntary departure, being excluded, going away. You're saying he's got to know all the consequences, including the fact that he's going to live the rest of his life in Mexico, et cetera, et cetera. And the government has to give him a sign that says, this is it. Make sure you get your fingerprints on it and sign it. Your Honor, the petitioner is not asking the government to issue such warnings other than to meet its burden of proving that the alien has knowingly and voluntarily accepted its terms. And this may be shown in many different sorts of ways that are indicative through these procedural safeguards, such as whether there is any form of process, whether there is an agreement between the alien, whether there is an implied or explicit threat of deportation. In the present case, there is no such process, no formal process, no process whatsoever when Mr. Landaris was picked up from his work and brought to the border and basically dumped back in the border. Your Honor, the court looks at these procedural safeguards as indicia of the knowing and voluntary acceptance, which is the government's burden to prove. And Your Honor, this court has already held that when immigration officials return an alien to Mexico without explanation and with no voluntary or knowing acceptance, then no administrative voluntary departure has occurred. In Tapia, the court had found that when an alien is turned around at the border without any formalized process, that no administrative voluntary departure has occurred in that instance. Because the order of removal is intended to end the alien's physical presence and because administrative voluntary departure is in lieu of removal proceedings, it follows that administrative voluntary departure should likewise be seen as severing the alien's physical tie to the United States. And this is language from the Tapia versus Gonzalez case. Further, in Ybarra-Flores, another turn around at the border case, the alien was turned away at the border when she tried to reenter and also signed a document presented by immigration officials. In that instance, the court still found that there was no administrative voluntary departure because the alien did not knowingly and voluntarily accept the terms, even after signing this document. This court went on to say that given the consequences of an agreement to accept voluntary departure, such an agreement is like a plea agreement and should be enforced against an alien only when the alien has been informed of and has knowingly and voluntarily consented to the terms of the agreement. Your Honor's counsel have a question for you. Yes. When you talk of consenting to the terms of the agreement, does that just mean that the alien consents to depart in lieu of deportation? Or does it mean the alien has to consent to every consequence of the departure, such as consenting to physical presence being broken? Your Honor, an alien must consent to all of the consequences, including the presence-breaking consequence. This is especially true under Ybarra because unless an alien knows of the consequences of leaving, they can't voluntarily waive their rights. The terms of administrative voluntary departure include notice of consequences. And absent this notice, there's been a fundamentally unfair proceeding, which dovetails the due process issue. Your Honor, in the present case, the critical safeguards were not present, and the government fails to meet its burden, proving that Mr. Landera's knowingly and voluntarily accepted the terms. There's no evidence on the record that Mr. Landera experienced any sort of process. There's no evidence on the record showing that immigration officials initiated removal proceedings. There is no evidence of an expressed or understood threat of deportation. And there's no evidence of any agreement. If there are no further questions, Your Honors, we respectfully request that this Court reverse the IJ and BIA's conclusion that Mr. Landera's knowingly and voluntarily accepted administrative voluntary departure, effectively breaking his accrual of physical presence, and remand to address only the remaining cancellation of removal issues, hardship, and moral character. Thank you. Good morning. May it please the Court. David Dauenheimer on behalf of the respondent, the Attorney General. This Court should deny this petition for review for two reasons. First, the petitioner did not raise any issue as to the involuntariness or the process that he was given with respect to his voluntary departure, either before the immigration judge or the board. And thus, he's failed to exhaust his administrative remedies with respect to that claim, and this Court lacks jurisdiction to review them. Second, even assuming the Court has jurisdiction, the record does not compel a conclusion contrary to the immigration judge's finding that this petitioner accepted voluntary departure from the United States to Mexico in 1994. He never claimed otherwise before the immigration judge. He never claimed otherwise before the board, and therefore, the evidence of record is substantial in that he accepted voluntary departure. Turning to the second issue, that of voluntary departure, this petitioner was arrested at his place of employ in 1994 in Chino, California. He was then taken to an INS office in Riverside, California. At that point, he was facing a fork in the road. One, he could choose to enter removal proceedings and fight his deportation at that time. If he were to choose to do so, he would have been issued an order to show cause, and he would have entered formal proceedings, and then he would have had to show that he had some right or relief available to him. At that time, he had only been in the country for three years. Suspension of deportation required that he be in the country for seven years. So he wasn't of that relief, which preceded cancellation of removal, was not available to him at that time. The other choice was to forego those formal proceedings and accept voluntary departure. And that's the choice he made. How do we know that he made this choice? Counsel for petitioner argues that there's no evidence in the record that he accepted voluntary departure. However, he told the immigration judge in his cancellation of removal application that he left in 1994, quote, pursuant to a grant of voluntary departure. What more evidence did the I.J. need than the petitioner's own admission on his application for that relief that he accepted cancellation of removal or he accepted voluntary departure? Well, the immigration judge inquired further into it. He asked him, well, okay, go to the 1994 incident. What happened then? And in his testimony, he explained, I was working in Chino, California. I was arrested. I was taken to the INS office. I was returned to Mexico. He never argues. It goes a little farther than that, doesn't it? To an INS office, answer, yes, sir. And what happened in that office? Answer, I was kept there in a room, and they took me to Tecate. That's correct, Your Honor. However, he's represented by counsel at this time, too. And there's an on notice that an administrative voluntary departure is considered a break in physical presence. Can I finish? There's two more questions I want to ask. Yes, Your Honor. Question by the judge. Okay. So when you say you were deported, you were not ordered deported, but they took you to Mexico. Answer, exactly. That's correct, Your Honor. So that's a voluntary departure? Well, when the INS takes a guy down to Mexico and says, get out, that's a voluntary departure? I don't think so. It's a voluntary departure when you look at the whole facts of the case. The fact that he, on his cancellation application, admitted that he voluntarily departed. That he was, he left, quote, pursuant to a grant of voluntary departure. When you look at the fact that he's represented by counsel during this hearing. Not when they took him out and said goodbye. That's not a voluntary departure, is it? Voluntary departure is when they let the person go by himself. Right? Isn't that true? Hey, you got a voluntary departure, you have 30 days to get out of this country. Isn't that the way it works? Or do they just say, you have a voluntary departure, get in the car, we're going to dump you on the other side of the border? Your Honor, I think you may be referring to a grant of voluntary departure that an alien may get at the end of formal proceedings where he's given a certain amount of time to comply with that order, otherwise he will be removed by the agency. In certain instances where an alien is already under, in custody of INS, he's given a choice before proceedings. What does he want to do? Do you want to enter formal proceedings or do you want to take an administrative voluntary departure? And in those cases, oftentimes the alien will be escorted across the border. Okay. But where does it say here that he agreed to this? In his cancellation application at page 51 and 52 of the record, Your Honor, he checks first of all, he checks the box next to the question, have you ever departed pursuant to a grant of voluntary departure? He checks that yes. Then on this next page after that, he types in on an attachment to the form that in 1994, he was granted voluntary departure from Chino, California to Tecate, Mexico. So based on that and the fact that his counsel never raises any argument that, hey, this wasn't a real voluntary departure, this was my client was bamboozled, my client didn't wasn't told of his rights before he departed. All that the counsel argues before the immigration judge is my – I should be given a hearing because it's arguable whether matter of omalas, that is the board's decision in this case, finding that voluntary departures are break in presence. He should be allowed to argue whether that decision was right or wrong. He essentially was attacking the concept that a voluntary departure was a break in presence. But as we know, this Court has held in Vasquez-Lopez that a voluntary departure is a break in presence. He never made any allegations that his voluntary departure in 1994 was anything but a properly affected administrative voluntary departure. Counsel, what is there – the problem I have with this case is that there's nothing formal in the record that shows he was told anything about his rights and elected to some formal voluntary departure procedure. And the drive in the car seems to cut a little against that because it just seems ad hoc and totally infallible. So what am I missing here? Well, I guess I would respond in two ways, Your Honor. First, the absence in the record of any more information regarding this administrative voluntary departure is really a fault to be placed on the petitioner himself. He never raised any issue as to whether that voluntary departure was proper or not while he was before the immigration judge. The immigration judge had a cancellation of removal application in front of him that admitted an administrative voluntary departure in 1994. He followed up with some questions, got testimony that was wholly consistent with an administrative voluntary departure. And there was no reason for the service to follow up with a filing of, say, an I-26, which would be the election form for a voluntary departure or anything like that. I would also respond that the circumstances of this Petitioner's removal from the United States are actually more compelling, certainly, than those in Ibarra, Ibarra-Flores or in the Court's decision in Tapia. In those cases, the aliens had presented at the border and then were simply turned around and sent back. In Ibarra-Flores, the alien, before the immigration judge, argued, no, no, this wasn't an administrative voluntary departure. I was tricked. They told me to sign this form and that if I went back outside the United States and came back in, I would be able to apply for some type of relief. And when I tried to do that, then they told me I was wrong. So there was some allegation before the immigration judge that there was a – that the voluntary departure was not voluntary in any respect and was actually – the alien was misled into leaving the United States. In Tapia, the Petitioner argued that he was improperly just turned around at the border and sent back with no process at all, whereas in this case, we have no facts like that. And what happens is if the service picks up several aliens during a sweep of a place of employ, it's not uncommon that they would be given this – they would all face this fork in the road. They would have to choose formal process or voluntary departure. If they choose voluntary departure, it's also not uncommon that they would all be sent back across the border by the INS. They would not just be released back into the United States and given a few days to – 30 days to effect their own voluntary departure. Now, are they – are they in any case given a warning that if you depart voluntarily, your continuous presence is terminated? I was listening to the prior argument, Your Honor, and I was hoping to find an answer to that. I know that the – I believe the form that they sign is called an I-826. It's not in the record in these proceedings, and I'm not sure as to the – the content of that form in toto, whether it contains any language with respect to the break in continuous physical presence. But really what – what the Court in Tapia and Ibarra Flores were concerned with was whether the alien was given a knowing – knowingly and intelligently waived his right to enter into proceedings at that point. And in – and in those cases, it found that, well, a simple border turnaround or this kind of the – where these allegations of being misled by the government were – were present, that that wasn't enough, that there wasn't enough in the record to show that. In this case, there are no such allegations. And in the record, we have the Petitioner's own admission that he accepted voluntary departure in 1994. He never raised anything to that effect. The time is expired. Counsel, thank you. Thank you, Your Honor. Your Honors, in regard to the jurisdiction issue, the Petitioner did raise the issue in his pro bono appellate brief to the BIA in the record pages 5 to 6. And the Court itself posed question – the question whether and how Ibarra and Tapia apply. Further, opposing counsel is playing semantic games with the word voluntary. Voluntary was used in the Petitioner's testimony on the record at page 15, but whether when the Petitioner testified that he had left voluntarily, this was in regards to his 1999 departure to attend his mother's funeral. And further, the use of the term voluntary has two meanings. There's the layperson meaning, and there's also the legal meaning in this case, whether or not there was an administrative voluntary departure. What facts are in dispute on this record? I think the fact that dispute is whether or not there was such an administrative voluntary departure, whether there was a process. No, what facts are in dispute? You're giving me the legal issue. There's no dispute that he left under the circumstances described in the record, is there? I think there's a dispute as to whether the – when he left in 1994, whether that was in lieu of deportation hearings and an administrative voluntary departure, or whether he left voluntarily as in without putting up a fight or demanding to see an immigration judge. And your position is what? Is that he left not in lieu of deportation hearings, not without any of the formal processes that accompany an administrative voluntary departure, and such that when Mr. Landeros did say that he left voluntarily, it was not in terms of an administrative voluntary departure. When faced with a form in which he states that he left voluntarily, what is the government supposed to do? They know you didn't? Your Honor, I think although he checked the form that he did leave pursuant to a grant of administrative voluntary departure, the government still has no documents on record proving that the process he experienced in 1994 was an administrative voluntary departure. The Department of Justice had had this case for a year now. If there were documents out there to help them to formalize this issue and they hadn't had a chance to show them then, they had a chance to show them now. There is simply no evidence on the record that Mr. Landeros was told that the constant If they decided to come up with new documents, would you complain about it? Your Honor, if the documents were the documents at issue in 1994, then that would help the government prove its burden then, which is at issue here. And further You would complain about it, wouldn't you? Yes, but I think as a matter of fact that there are no documents. There's no complaining needed. Well, they haven't offered any. Maybe they felt they didn't need them. Further, Your Honor, it is not honest to require the government to meet some basic safeguards. We can't have a system that allows the government to just pick up an immigrant and put him into another nation as if he no longer existed. In a nation of Put him in what? Excuse me. Put him in what did you say? Into another country. Sorry. In Mexico. To pick him up and place him in another nation. To pick him up and take him home. Your Honor, the argument is that Mr. Landeros does have ties to this country. This is now his home. He has a wife and two children and a home, and he does pay taxes. Further, in a nation of procedures, this process requires more than what occurred here. The act's no. We're letting you exceed your time since the government exceeded theirs by a minute or so, but you should wind up now. Okay. Finally, Your Honor, we're not asking the Court to further or to set any further general rules. We're simply saying that in this case there is no administrative voluntary departure because there's not a single indicia of the procedural safeguards. Thank you. Thank you. Case just argued is submitted.
judges: Farris, Gould, Cff, Duffy